UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 10-20112

v.                                                   Honorable David M. Lawson

STEVEN DENT,

        Defendant.
_____/

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Defendant Steven Dent has filed a motion, later supplemented by counsel, asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Dent has served approximately 105 months of a 20-year prison sentence for a drug conspiracy to which he pleaded guilty. He argues that a sentence reduction is justified by his medical conditions (obesity and type 2 diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that Dent's medical conditions amount to extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if he were set free. Despite the government's concession, the present facts and circumstances do not amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires. Moreover, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Dent has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motions will be denied.

I.

Dent pleaded guilty to one charge of conspiracy to distribute cocaine, 21 U.S.C. § 846. On April 16, 2014, the Honorable Avern Cohn sentenced him to a mandatory minimum term of 240 months in prison. He presently resides in the custody of the Bureau of Prisons at FCI Elkton, in Lisbon Ohio, which is a low security facility that houses around 1,390 inmates. Dent is 51 years old. He has served around 104 months or 43% of his twenty-year custodial sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on March 2, 2029.

The most recent data disclosed by the BOP indicates that there are three active coronavirus cases among inmates and 30 among staff at the Elkton facility, although 855 inmates and 56 staff previously were diagnosed and now have recovered. Reports indicate that nine inmates have died. *See* https://www.bop.gov/coronavirus/. The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates. At Elkton, the reports indicate that 175 staff and 21 inmates fully have been vaccinated.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Dent relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered

§ 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

The government continues to resist the holding in *Jones*, calling it "*dicta*" and professing to 'preserve" its argument against the application of that case's teachings. However, after *Elias*, there is not much argument to preserve; *Elias* is controlling circuit precedent.

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

The government affirmatively asserts that the defendant has established that he faces an "extraordinary and compelling" medical risk due to his acknowledged diagnoses with type 2 diabetes and his obesity. That does not end the inquiry on this element, however.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that both obesity and type 2 diabetes seriously elevate the risk of complications for anyone who is infected with the COVID-19 disease. *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021).

However, notwithstanding the government's concession on this point, the recognition that an inmate has one or more serious and certain medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release. That is because another obviously and highly pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be remote. Recent reports indicate that the probability of infection at Elkton, although once quite high, now is very low, with only three active cases among the 1,390 inmates. Further, even as the incidence of infection at Elkton dramatically has declined, the probability of a future severe outbreak also

has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 175 staff and 21 inmates Elkton. The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds. The available medical records do not indicate that Dent himself has been vaccinated, but federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases). Although the defendant has two acknowledged certain risk factors (obesity and type 2 diabetes), considering the present handful of active cases among inmates at his facility, as well as the ongoing vaccination program at Elkton, the defendant has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants his release.

The circumstances of the pandemic are fluid and rapidly evolving; both the CDC's guidance and the circumstances at each institution change on a daily basis. In this case, despite the prisoner's acknowledged medical factors that give some cause for concern, the overall picture of the pandemic's progress at his facility has altered the landscape from one that was even very recently much more alarming, to a situation that is at present decidedly less so. Taking all of those circumstances into account, the defendant has failed to establish that an extraordinary and compelling risk to his health presently warrants his immediate release.

C.

Even if the defendant has made a satisfactory showing of extraordinary and compelling circumstances, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that

requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Dent's crime is serious. He was arrested after a traffic stop when police found more than 13 kilograms of cocaine in his car. During the stop, he provided a false identification to police, and, upon realizing that an arrest was imminent, he attempted to flee, while dragging one of the arresting officers alongside the car. The instant offense was only one episode of an extensive criminal history that featured prior prison terms of up to 40 years for other drug crimes. The defendant has a history of committing other crimes while on parole or supervision.

Judge Cohn determined at the time of sentencing that the 240-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of those goals, undoubtedly, was protection of the public. Moreover, that sentence was driven by the 20-year mandatory minimum term based on the defendant's history of prior serious drug felonies.

Reducing the defendant's sentence to less than half of that mandatory minimum term certainly would not have a deterrent effect on others likely to commit similar offenses; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who repeatedly has shown his willingness to flout the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief. Although the defendant's obesity and diabetes put him at risk, his past criminal conduct and his repeated commission of other crimes while under supervision cast grave doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, this and other courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms. *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020). There are no facts apparent in this record suggesting that a different outcome is warranted here.

### III.

Dent has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release

(ECF No. 135, 139) are **DENIED**.

                                               s/David M. Lawson
                                               DAVID M. LAWSON
                                               United States District Judge

Dated:   March 8, 2021